TOM LOFTUS, Chairperson, Assembly Organization Committee
You ask whether the appointment of individuals to the Board on Aging and Long-Term Care under section 15.105, Stats., who have an interest in or affiliation with long-term care facilities such as nursing homes renders the State of Wisconsin ineligible for certain federal funding under the Older Americans Act Amendments of 1987, Pub.L. No. 100-175, 101 Stat. 926
(1987).
Although any determination of eligibility for federal funding rests exclusively within the province of the United States Department of Health and Human Services ("HHS"), it is my recommendation that statutory, regulatory or contractual language be promulgated to preclude such individuals from participating in the appointment or reviewing the activities of those individuals performing ombudsman activities under 42 U.S.C. § 3027 (a)(12) (1989).
42 U.S.C. § 3027 (a)(12) (1989), as amended by Pub.L. No. 100-175, provides in part as follows:
(12) . . .
 (A) The State agency will establish and operate, either directly or by contract or other arrangement with any public agency or other appropriate private nonprofit organization, *Page 100 
other than an agency or organization which is responsible for licensing or certifying long-term care services in the State or which is an association (or an affiliate of such an association) of long-term care facilities (including any other residential facility for older individuals), an Office of the State Long-Term Care Ombudsman . . . and shall carry out through the Office a long-term care ombudsman program which provides an individual who will, on a full-time basis [perform certain specified activities] —
. . . .
(F) The State agency will —
 (i) ensure that no individual involved in the designation of the long-term care ombudsman (whether by appointment or otherwise) or the designation of the head of any subdivision of the Office is subject to a conflict of interest;
 (ii) ensure that no officer, employee, or other representative of the Office is subject to a conflict of interest; and
 (iii) ensure that mechanisms are in place to identify and remedy any such or other similar conflicts.
You indicate that the Wisconsin Department of Health and Social Services ("Department"), through its Bureau on Aging, contracts with the Board on Aging and Long-Term Care ("Board") for the receipt of such ombudsman services. The Board is appointed pursuant to section 15.105 (10), which provides as follows:
 BOARD ON AGING AND LONG-TERM CARE. There is created a board on aging and long-term care, attached to the department of administration under s. 15.03. The board shall consist of 7 members appointed for staggered 5-year terms. Members shall have demonstrated a continuing interest in the problems of providing long-term care for the aged or disabled. At least 4 members shall be public members with no interest in or affiliation with any nursing home. *Page 101 
The Board's duties are described in section 16.009 (2). They include items which, in whole or in part, encompass aspects of ombudsman activities performed under 42 U.S.C. § 3027 (a)(12) (1989). Compare sec. 16.009 (2)(a) — (i), Stats., with45 C.F.R. §§ 1321.11 and 1321.13 (1988).
Even though a state statute provides that the Board is the unit of state government that supervises the performance of ombudsman services, the Governor is nevertheless required to assure HHS that Wisconsin is in compliance with 42 U.S.C. § 3027
(a) (1989):
 If a State statute establishes a State ombudsman program which will perform the functions of section 307 (a)(12) of the Act, the State agency continues to be responsible to assure that all of the requirements of the Act for this program are met regardless of the State legislation or source of funds. In such cases, the Governor shall confirm this through an assurance in the State plan.
45 C.F.R. § 1321.9 (d) (1989).
Since section 15.105 (10) does not require that individuals with an interest in or affiliation with long-term care facilities be appointed to the Board, the statute itself does not violate the provisions of 42 U.S.C. § 3027 (a)(12)(F) (1989). If such individuals are appointed to the Board, however, the Department must "ensure that mechanisms are in place to identify and remedy any . . . conflicts [of interest]." 42 U.S.C. § 3027 (a)(12)(F)(iii) (1989). Although various mechanisms such as amendment of the statute or rulemaking under chapter 227 are presumably available to the Department and/or the Board, the most facile mechanism to identify and remedy such conflicts would appear to be through explicit language in the contract between the Department and the Board.
I have recently advised the executive director of the Board that the Board is the ombudsman office under 42 U.S.C. § 3027
(a)(12)(A) (1989) and that, in the absence of some other express designation by the Board, it is reasonable to consider the *Page 102 
Board's executive director to be the ombudsman under that statute. Since the ombudsman is not the Board itself, the Department must ensure that "no individual involved in the designation of the long-term care ombudsman (whether by appointment or otherwise) or the designation of the head of any subdivision of the Office" has such a conflict of interest.42 U.S.C. § 3027 (a)(12)(F)(i) (1989).
The difficult question is exactly what constitutes a conflict of interest. Neither 42 U.S.C. § 3027 (a) nor its implementing regulations explicitly define the term "conflict of interest."42 U.S.C. § 3027 (a)(12)(A) does prohibit the Department from contracting with any entity that licenses or certifies long-term care services as well as any entity or association of long-term care facilities or an affiliate of such an association. But this is an express prohibition which is not violated by contracting with the Board. In addition, if the Department did not contract with the Board, it could operate the ombudsman program itself (assuming that it had statutory authority to do so) without violating this express prohibition. See 53 Fed. Reg. 10107, 10109 (1988);53 Fed. Reg. 33758, 33760 (1988).
In his remarks to the House of Representatives, 133 Cong. Rec. E1380 (daily ed. April 9, 1987), Congressman Bonker of Washington indicated that the conflict of interest provisions contained in the House Bill, H.R. 1451, were designed "[t]o ensure that those who operate ombudsman programs are not `foxes guarding the henhouse,'. . . ."
The Senate Bill, S. 959, 100th Cong., 1st Sess. Sec. 341 (1987), which was more explicit with respect to the ombudsman office itself, provided in part as follows:
(c)(2) Only an individual who —
 (A) is the head of the public agency or organization operating the Office, or reports directly to the head of such public agency or such organization;
 (B) has no pecuniary interest in an entity described in subsection (d); and *Page 103 
 (C) has demonstrated knowledge relating to long term care matters involving older individuals;
 May be eligible to be appointed or employed as State Long-Term Ombudsman.
. . . .
 (d) No State may establish or operate an Office of the Long-Term Care Ombudsman under subsection (a)(1) by contract or other arrangement with —
 (1) an agency or organization that is responsible for licensing or certifying —
(A) long-term care facilities,
(B) health care professionals, or
 (C) other individuals providing institutional or noninstitutional long-term care services,
in the State, or
(2) any —
(A) long-term care facility, or
 (B) association (or an affiliate of such an association) of long-term care facilities (including any other residential facility for older individuals).
133 Cong. Rec. S4866-67 (daily ed. April 8, 1987).
In their joint remarks to the Senate, 132 Cong. Rec. S15,523 (daily ed. October 7, 1986), Senators Glenn and Heinz described the intent of the conflict of interest language contained in the Senate Bill as follows: "We must prohibit organizations and individuals with an interest in long term care facilities from influencing the work of the ombudsman program . . . ."
The House Bill was passed in lieu of the Senate Bill after amending its language to contain much of the language of the Senate Bill. See 1987 U.S. Code Cong. Admin. News 866. There is no indication whether the Senate felt that the less explicit conflict of interest language contained in Pub.L. No. *Page 104 
100-175 addressed all of the concerns contained in the more specific language of the Senate Bill.
Under the circumstances, I cannot predict with absolute certainty whether HHS would deny funding under 42 U.S.C. § 3027
(d) (1989) or attempt to impose other fiscal sanctions against the state if any individuals within the category you describe were to vote on or otherwise participate in the selection of the ombudsman or the selection of the head of any subdivision of the Board. However, in order to avoid any possibility of fiscal sanction by HHS, if such individuals are going to continue serving on the board, I strongly recommend that they be precluded by contractual, regulatory or statutory language from participating in the selection of the ombudsman or the head of any subdivision of the Board and that they refrain from reviewing those ombudsman activities described in 42 U.S.C. § 3027 (a)(12) (1989).
DJH:FTC *Page 105